Approved: _____
JACOB R. FIDDELMAN
Assistant United States Attorney

Before:   HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

**20 MAG 7247**

------------------------------------X
UNITED STATES OF AMERICA            :   SEALED COMPLAINT
                                    :
                                    :   Violation of 21 U.S.C.
        - v. -                      :   § 846
                                    :
OCHIABUTOR SORENSON ORUCHE, a/k/a   :   COUNTY OF OFFENSE:
"Sorenson Ochiabutor Oruche,"       :   NEW YORK
                                    :
              Defendant.            :
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss:

RAYMOND MCGRATH, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. In or about June 2020, in the Southern District of New York and elsewhere, OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures and substances containing a

1

detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my personal observations, my review of recordings and law enforcement reports, draft transcripts of recorded communications, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

   a. Since 2019, the DEA has been investigating a drug trafficking organization ("DTO") transporting heroin from an overseas country ("Country-1") to the New York City area. In or about late 2019, foreign authorities intercepted a shipment of approximately five kilograms of a substance that tested positive for heroin, which the DTO intended to be transported to the New York City area for sale to buyers and subsequent redistribution.

   b. As part of that investigation, an undercover law enforcement officer ("UC-1") has positioned himself as an individual who has access to kilogram-level quantities of heroin in New York City for sale to others for distribution. As part of those undercover efforts, a phone number for UC-1 has been provided to various individuals as a way for individuals looking to purchase and redistribute heroin to contact UC-1. UC-1 has had several telephone conversations with a suspected overseas member of the DTO regarding that person's efforts to identify buyers for the above-referenced five kilograms of heroin in New York City, and to put such buyers in contact with UC-1 for purposes of delivering the heroin (which, as described above, had in fact been intercepted). While payment for the heroin was not explicitly

2

discussed on these calls, based on my training and experience, I know that DTOs often arrange for payment for narcotics through separate channels in order to reduce the possibility of law enforcement detection and/or interception.

  c. As part of these undercover efforts, a coconspirator not named herein ("CC-1") provided UC-1 with a phone number ("Phone-1") and a certain password ("Password-1"). Based on my training and experience and the context of the communications in which that information was provided, I believe that CC-1 was informing UC-1 that an individual would shortly call UC-1 from Phone-1 and provide Password-1, which would indicate that that individual was the person to whom UC-1 should deliver the above-described five kilograms of heroin.

  d. Based on my review of business records provided by the service provider for Phone-1, I have learned that Phone-1 is subscribed to in the name "Sorenson Oruche" at a particular address in Houston, Texas. Based on my review of criminal history records, I have learned that OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, has been previously convicted of, among other things, heroin trafficking, for which the defendant received a sentence of 145 months in or about 2008.

  e. On or about June 16, 2020, UC-1 received an incoming telephone call from Phone-1, which I believe, based on my participation in this investigation, and as explained above, indicates that the person using Phone-1 had been given UC-1's phone number by a DTO associate who understood UC-1 to be in possession of the above-described heroin shipment in the New York City area. The call was recorded by law enforcement. The person using Phone-1 was later identified as OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, as described herein. The person using Phone-1 identified himself as "Ochi" and stated, in substance and in part, that he was affiliated with CC-1, that he would call UC-1 again the next day from another phone number to arrange for a time to meet, and that he would be coming to New York from Texas. I believe that "Ochi" is a shortened, nickname version of "Ochiabutor," one of ORUCHE's names.

  f. Thereafter, communications between UC-1 and ORUCHE continued regarding arranging an in-person meeting at which ORUCHE would pick up ten kilograms of heroin from UC-1. During the course of those recorded communications, ORUCHE stated, in substance and in part, that he was driving a silver Chevrolet Equinox from Texas to New York.

    g. On or about June 22, 2020, UC-1 sent ORUCHE a text message containing a specific location in Manhattan at which the meeting to conduct the heroin transaction would occur ("Location-1"). Approximately 30 minutes later, a silver Chevrolet Equinox with Texas license plates arrived at Location-1. At approximately the same time, ORUCHE called UC-1 and stated, in substance and in part, that he was parking his car at Location-1. ORUCHE, who was alone in the vehicle, exited his vehicle and met with UC-1. The meeting was observed by law enforcement and recorded. UC-1 was carrying a black bag containing ten one-kilogram bricks of sham narcotics. UC-1 stated to ORUCHE, in substance and in part, that the bag contained "ten" and asked if ORUCHE wanted to open the bag to confirm. Based on my training and experience, I know that UC-1's reference to "ten" was a reference to ten kilograms of drugs. ORUCHE stated that he would open it in the car, took the bag from UC-1, and reentered his vehicle with the bag. Law enforcement officers then detained ORUCHE. The ten sham kilograms of narcotics were recovered from ORUCHE's vehicle.

    h. Thereafter, ORUCHE was advised of his *Miranda* rights and agreed to speak with law enforcement. In substance and in part, ORUCHE stated that a friend of his had told him that he would be paid to drive from Texas to New York to pick up a package and return with it to Houston, that he would then be provided with contact information for a person to whom he would deliver the package, and that he knew he would be picking up "five" to "ten," which he knew was a reference to narcotics. ORUCHE also stated, in substance and in part, that he had been given Password-1 to provide to UC-1 to confirm his identity.

    [Remainder intentionally blank]

WHEREFORE, I respectfully request that a warrant be issued for the arrest of OCHIABUTOR SORENSON ORUCHE, a/k/a "Sorenson Ochiabutor Oruche," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
RAYMOND MCGRATH
Special Agent
Drug Enforcement Administration

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
13th day of July, 2020

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK